Thos. J. Caruthers and Theo. Buchanan *v.* R. B.
Caruthers *et als.*

Supreme Court Practice. *Writ of Restitution.* A writ of restitution
will, on motion, be issued by this court to restore an applicant to the
possession of land in litigation, of which the applicant was deprived
by writ of possession granted by the court below before, but executed
after appeal perfected.

## FROM WILLIAMSON.

Appeal from the Chancery Court at Franklin. W.
S. Fleming, Ch.

D. Campbell for complainant.

R. N. Richardson for defendants.

Cooper, J., delivered the opinion of the court.

The original bill in this cause was filed on the
24th of May, 1876, by the complainants as sureties
of the defendant, R. B. Caruthers, on his bond as
executor of the will of Robert Caruthers, deceased,
alleging that a balance of several thousand dollars had
been found against their principal as executor upon
settlement in the county court, and seeking to subject
to the satisfaction of this debt a tract of land which
said R. B. Caruthers had conveyed to the defendant,
Young W. Redmond, in mortgage with power of sale,
to secure two debts, one of about $5,500, to which
priority of satisfaction was given, the other of $2,100.
The object of the bill was to reach the surplus value

of the land after paying the secured debts.    The only defendants to this bill other than Caruthers and Redmond, were the devisees of Robert Caruthers.    The complainants became satisfied that the land would not sell for more than enough to pay the mortgage debts, and took no steps to press the case.

In this State of the matter Atha Thomas, as the security of R. B. Caruthers on the note of $2,100, secured by the mortgage deed to Redmond, filed his petition to be made a co-complainant in the original bill, and to enforce the foreclosure of the mortgage for his indemnity.    He stated in the petition that he had heard that Mary P. Caruthers, the wife of R. B. Caruthers, was threatening to claim a homestead in said lands, and he asked that she might be made a defendant with her husband to his petition, and that it be decreed that they were not entitled to a homestead in said land, etc.    Subpœna and a copy of this petition were issued for Caruthers and wife, upon which the sheriff made the following return: " Came to hand 21st of May, 1877, and executed 29th of May, 1877, and delivered a copy of bill to R. B. Caruthers." The defendants were summoned to appear on the first Monday of June.    On the 26th of that month Thomas obtained an order that he be made a complainant in the original suit, and that Caruthers and wife "answer said petition as part of the original bill on or before Tuesday next."    At the August rules an order was made that "the allegations of said petition, as part of the original bill," be taken for confessed against Caruthers and wife.    This was set aside afterward as to

the husband, and he was permitted to file an answer, in which, after admitting the facts touching the indebtedness, the making of the mortgage, etc., he expressly set up the defense of his wife's right to homestead.    Afterward, and so far as appears without any proof, a decree was, on the 2d of January, 1878, rendered declaring that Caruthers and wife were not entitled to a homestead in said land, and that Thomas had the right to have the mortgage foreclosed by sale. During the same term, upon a report of the master of the exact amount of the mortgage debts, the land was ordered to be sold.

On the 18th of March, 1878, Mary P. Caruthers made affidavit that the subpœna issued on Thomas's petition had never been served upon her, and that she had had no knowledge of the proceedings under that petition, or of the existence of the suit until within the month.    On the same day the court made an order that she have leave to file a petition then presented, and the said Thomas, and other parties whose rights were effected thereby, waiving service of process, were allowed "to plead, answer and demur" to said petition.    The petition, which was by the petitioner by next friend, after stating the previous proceedings in the cause, set out the facts which entitled the petitioner to homestead in the land, and expressly averred that the subpœna on the petition had never been served upon her, and that she had no knowledge of the suit until the 9th of that month.    It prayed that the orders and decrees previously entered in said causes be set aside so far as they affect her rights, that the

cause be re-opened for her benefit, that she be permitted to answer the original bill and the petition of Thomas, that proof be taken as to the question of homestead, and, upon the hearing, that a homestead be set apart to her out of the land in controversy.

To this petition Thomas and Redmond filed answers, proof was taken both upon the point of the service of the process and the homestead right, and the matters involved were heard on the 14th of January, 1879. The Chancellor treated the petition as a proceeding to impeach the decree of the 3d of January, 1878, and being of opinion that the decree could not be impeached in that mode, and was not successfully impeached, dismissed the petition. The petitioner prayed an appeal to this court, which was granted upon the execution of the requisite bond, and bond was given on the 20th of January, 1879.

In the meantime the decree of the January Term, 1878, for the sale of the land was executed by a sale, Atha Thomas becoming the purchaser, and the sale was confirmed at the June Term, 1878. At the December Term, 1878, a writ of possession, to put the purchaser in possession of the land, was ordered to issue, but the order, after reciting the pendency of the proceedings under the petition of Mary P. Caruthers, expressly decreed that nothing in the order should have the effect of deciding the matters in issue upon that petition, but the same should remain open until the hearing upon the said petition. Notwithstanding this qualification of the order, a writ of possession was issued under it on the 24th of December, 1878, and

executed on the 21st of January, 1879, one day after the petitioner had perfected her appeal to this court from the Chancellor's decree dismissing her petition. The transcript of the record having been filed in this court, the case is now before us upon a motion of the appellant to be re-instated in the possession of the land.

The jurisdiction of this court to make any order necessary to the protection of the rights of suitors acquired by appeal, is not called in question. Nor is it denied that the execution of any order, vacated by the appeal, after the pefecting of the appeal, would be a violation of the rights of the appellant, and that the latter would be entitled, under such circumstances, to a writ of restitution. The position assumed is, that the writ of possession was issued in a case entirely independent of the proceedings brought up by the appeal, and that neither the writ nor the order on which it is based was affected by the appeal. The argument is, that the wife's petition sought to impeach the decree of sale in the original cause for fraud, and that this could not be done by petition, but only by an original bill. To meet the objection that the defendants to the petition had themselves treated it as an original bill by filing answers, taking proof, and going to a formal hearing, attention is called to the fact that the defendants were permitted, by the order allowing the petition to be filed, to plead, answer and demur thereto, and that a demurrer was put into the answer on this very ground. The Chancellor's decree is in part based on this matter of demurrer.

It may be well to remark at the outset that this whole case teems with anomalies in pleading and practice. The original bill was filed by the sureties of R. B. Caruthers as executors, to reach the surplus value of mortgaged premises for their indemnity. Thomas is permitted, by petition, to become a co-complainant, not to reach the surplus, but to enforce the mortgage, without, so far as appears, paying the debt or showing any equity except the insolvency of the grantor. Mary P. Caruthers was no party to the original bill. She is brought in by the petition, and only required, either by the subpœna or the order of court, to answer the petition, not the original bill, although it is under the bill that a sale is sought. No effort is made to require her to answer, although the homestead right of herself and children was at stake. The writ of possession was obtained at a term subsequent to that during which the sale of the land was confirmed, and it may be when the court had no power to grant it except as an incident to the determination of the rights of the parties upon the petition of the appellant. Of course the court does not undertake, in this motion, to decide any of these points, or even to intimate an opinion. as to the validity of any of the proceedings. They are only referred to for the purpose of showing that little respect has been paid to forms, and that in acting upon this application the court should look to substance.

If we look to the prayer of the appellant's petition of the 18th of March, 1878, we will find that it was, in substance, an application to open the *pro*

*confesso* taken against the petitioner, and the decrees
based thereon, and to be permitted to file an answer,
upon the ground that the petitioner had never been
served with process, nor had any notice of the proceed-
ings until a few days before the filing of the petition.
Such an application might, perhaps, have been made
by motion and affidavits, without a formal petition,
although such a petition could not prejudice the right.
It was the act of the defendants themselves, in ask-
ing permission to answer the petition, which led to
the formal and circuitous mode pursued. Under our
practice, it has often been held that if the defendants
choose to treat a petition as a bill, they may do so,
and the court will not raise objections which the par-
ties have waived. In this view, a demurrer in an
answer is, like a demurrer filed with an answer, waived
unless brought to the attention of the court at the
first term. Code, secs. 4319, 4320; *Harding* v. *Egin,*
2 Tenn. Ch., 39.

It is obvious, therefore, when this cause comes to
be finally heard, that the court must determine whether
the appellant was not entitled to have had the *pro
confesso* set aside upon her petition treated either as
a summary application to be let in to defend, or as
an original bill on the ground that the proceedings
were void for want of notice. In either event, the
relief asked may be granted. Unquestionably, her pos-
session of the property, to the extent of her homestead
right, ought not to have been interfered with until
her application was finally heard. *Hoge* v. *Hollister,*
at Nashville, January, 1878, per McFarland, J. And

so the Chancellor seems to have thought, by qualifying the order made for a writ of possession, although the words of qualification are equivocal.

The motion of the appellant is well taken, and a writ of restitution will issue at once to restore her to the possession of the homestead. But as the evidence of her own witnesses shows that the homestead would not cover more than ten or twelve acres, in addition to the residence, the writ will be limited to ten acres, to be laid off in a convenient form.